IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| CARLOS V.[1],<br><br>Plaintiff,<br><br>v.<br><br>COMMISSIONER OF SOCIAL SECURITY,<br><br>Defendant. | Civil No. 21-1160 (GLS) |

**OPINION AND ORDER**

Plaintiff seeks review of the Commissioner of the Social Security Administration's (the "SSA") decision to redetermine and terminate his Social Security Disability Insurance benefits ("SSDI"). Docket Nos. 3, 32. The SSA opposed premised on the Appeals Council's decision to dismiss Plaintiff's request for review as untimely. Docket No. 37. The parties consented to the entry of judgment by a United States Magistrate Judge under the provisions of 28 U.S.C. §636(c). Docket No. 10. After careful review of the administrative record and the parties' briefs, the Appeals Council's dismissal of Plaintiff's request for review is **REVERSED.** The case is remanded to the Appeals Council for proceedings consistent with the Court's opinion.

## I.   Procedural Background

Plaintiff worked as a specialized machinery operator until July 2010. Tr. 43, 537, 539.[2] On October 25, 2010, Plaintiff filed an application for SSDI claiming that, as of July 2, 2010, the following conditions limited his ability to work: degenerative disc disease in the cervical spine and lumbar spine, obesity, major depressive disorder, and anxiety. Tr. 34, 535, 537. Plaintiff received treatment from several doctors as evidenced by his disability report. Plaintiff was required by the

---

[1]   Plaintiff's last name is omitted for privacy reasons.

[2]   "Tr." refers to the transcript of the record of proceedings.

SSA to complete a consultive examination with Dr. Rafael Miguez Balseiro. Tr. 666. Plaintiff did so.

On February 18, 2011, the SSA notified Plaintiff that he was entitled to monthly disability benefits with an onset date of January 1, 2011. Tr. 382. However, thirty-three months later, the SSA informed Plaintiff that his disability benefits were suspended because of fraud or similar fault related to evidence on which the SSA relied when adjudicating his claim. Tr. 196. The suspension of benefits was the result of an investigation by the United States Department of Justice in which several doctors were accused of making false statements or representations of facts in the medical reports submitted to the SSA. Tr. 196. Among the indicted physicians was Dr. Miguez Balseiro, who issued Plaintiff's consultive examination at the SSA's request. The SSA then discredited medical evidence submitted by Dr. Miguez Balseiro, redetermined Plaintiff's application, and concluded that he was not disabled. Tr. 252-53; 220-228. The SSA stated that "Dr./Mr. Rafael Miguez Balseiro provided incorrect, incomplete or fraudulent evidence to us and that fraud or similar fault was involved in [Plaintiff's] application for disability benefits." Tr. 252. The letter advised Plaintiff that he had sixty (60) days to file a request for reconsideration.

On January 15, 2014, Plaintiff's non-attorney representative moved for reconsideration. Tr. 259. The SSA requested that Plaintiff submit any additional evidence relating to his conditions except that of Dr. Miguez Balseiro. Tr. 265. On July 25, 2014, after reevaluating its initial determination, the SSA upheld its determination to terminate Plaintiff's benefits. Tr. 269-70. The SSA also informed that Plaintiff owed $49,643.00 in overpaid benefits. Tr. 270. Plaintiff had sixty (60) days to seek Administrative Law Judge ("ALJ") review. Plaintiff timely filed his request for review. Tr. 398.

On June 19, 2015, while Plaintiff waited for the ALJ to review his benefits redetermination, the Office of the Inspector General ("OIG") sent a memorandum to the SSA Acting Deputy General Counsel explaining that Dr. Miguez Balseiro had pled guilty to a one-count information. Tr. 279-281. And that charges against him for providing false statements to the SSA had been dismissed. Tr. 279-281. The OIG further explained that it had reason to believe "that fraud was involved with medical evidence submitted by Dr[]. Miguez Balseiro." Tr. 281. As such, on January 2016, the SSA conducted a "Special Determination" on the following: "Is there reason to believe that fraud or similar fault (FSF) was involved in the evidence provided by Dr. Rafael Miguez-Balseiro in the claim for disability benefits filed by Carlos L Vazquez Ramos[?]" Tr. 240-242. The

SSA examiner determined that "the preponderance of evidence in the file does not support a Fraud or Similar Fault decision." Tr. 241. Nevertheless, on February 16, 2016, SSA disability examiner redetermined Plaintiff's claims and found that his disability claims should be denied. Tr. 244-45.[3]

On May 26, 2017, the SSA sent Plaintiff a letter acknowledging his June 19, 2015 request for a hearing with the ALJ. Tr. 390-393. The letter explained that the agency redetermines an individual's disability claims when there is reason to believe fraud or similar fault was involved. Tr. 390. And that the evidence submitted by Dr. Miguez Balseiro "must be considered under our rules regarding fraud or similar fault." Tr. 391. Additionally, the letter explained that Plaintiff's file contained evidence from Dr. Miguez Balseiro and that the "ALJ will consider if [that] information shows that fraud or similar fault was involved in providing evidence in your case." If so, the evidence of Dr. Miguez Balseiro would be disregarded. Tr. 391.

On July 27, 2018, Plaintiff appeared before ALJ Henry Kramzyk for a hearing in which he was represented by a non-attorney representative. Tr. 31. Plaintiff testified as to his past jobs, his physical limitations, and depression. Tr. 52-77. On October 19, 2018, the ALJ issued a decision denying Plaintiff's disability claims. The ALJ followed the Social Security Ruling 16-2p in determining whether evidence submitted by Dr. Miguez Balseiro should be disregarded. The ALJ did "not find evidence of similar fault as is also noted in the Special Determination (6A)." Tr. 34. As such, he then proceeded to consider the entire record, including Dr. Miguez Balseiro's evidence but giving it "little weight." Tr. 34, 41-42.[4] The ALJ determined that there was insufficient evidence supporting a finding of disability. Tr. 44. Plaintiff's disability benefits were terminated on October 19, 2018. Tr. 44. Plaintiff's sixty-day window to request review before the Appeals Council began to accrue.

According to Plaintiff, he sought review with the Appeals Council. However, the exact date of said request for review is uncertain. Plaintiff assures that his non-attorney representative sent the request for review on December 22, 2018. Docket No. 32 at p. 4. And that while waiting for the Appeals Council to schedule a hearing, Plaintiff parted ways with his non-attorney representative and retained counsel, Bladimir Santiago. On June 2, 2020, Attorney Santiago sent

---

[3] It is unclear from the record why the SSA conducted a Special Determination after the OIG memorandum regarding Dr. Miguez Balseiro's charges and plea.

[4] The ALJ noted in his decision that the SSA, initially on redetermination, erred by excluding all evidence as to Dr. Miguez Balseiro and "not apply[ing] SSR 16-2p in determining whether any such evidence from Dr. Miguez Balseiro should be disregarded due to fraud or similar fault." Tr. 41.

a letter to the Appeals Council inquiring about the pending hearing. Tr. 20. The Appeals Council requested that Plaintiff provide evidence that he filed a request for review of the ALJ's decision. Tr. 18. On November 5, 2020, Plaintiff's attorney responded by mailing the request for review form dated December 22, 2018. Tr. 16, 18.

On November 30, 2020, the Appeals Council sent Plaintiff a letter explaining that it had received a copy of the December 22, 2018 request for review and that, having no record of prior receipt, the SSA would deem that the date of the request for review was the date in which it received copy of the December 22, 2018 letter. Tr. 11. The Appeals Council also informed Plaintiff that it would send him a separate letter giving him an opportunity to explain why the request for review was untimely or to submit prove that it was timely. Tr. 11. Plaintiff posits that he never received the letter from the Appeals Council allowing him to explain why his request was untimely or to submit proof of timeliness. On February 4, 2021, the Appeals Council dismissed Plaintiff's request for review as untimely and because Plaintiff had not shown good cause for missing the deadline. Tr. 1-9. It further noted that an SSA record had a notation that, as of March 21, 2019, no request had been filed before the Appeals Council. Tr. 7; Docket Nos. 32 at pp. 5-6; 37 at p. 5. The ALJ's decision was the final decision of the SSA. Plaintiff filed the instant complaint seeking review of the ALJ's redetermination of benefits. Docket No. 3. In support of his appeal, Plaintiff submitted a sworn statement of his non-attorney representative stating that he timely filed the request for review (on December 22, 2018) before the Appeals Council. Docket No. 36.

## II. Discussion

Plaintiff posits that the SSA's decision is erroneous, procedurally and substantively. He argues that once the SSA concluded that there was no evidence of fraud or similar fault relating to Dr. Miguez Balseiro's evaluation of Plaintiff, the Commissioner should have seized the redetermination of benefits. Docket No. 3 at ¶ 19. He argues that the SSA thus violated the Social Security Act, the Administrative Procedure Act, and the Due Process Clause of the Fifth Amendment. The SSA contends that the Court should not consider the merits of the redetermination because Plaintiff's appeal of the ALJ decision before the Appeals Council was untimely. Docket No. 37 at pp. 1, 11. And that the Court's review should be limited to determine whether the Appeals Council abused its discretion when it dismissed Plaintiff's request for review.

In 1939, Congress amended the Social Security Act and provided for judicial review of "any final decision of the [agency] made after a hearing" pursuant to 42 U.S.C. § 405(g). Smith v.

Berryhill, 139 S. Ct. 1765, 1772 (2019). Disability claimants must follow a four-step process before obtaining review from a district court. The claimant must first seek an initial determination as to his eligibility. If unsatisfied with the initial determination, the claimant is afforded a *de novo* review by the SSA. See 20 C.F.R. §§ 404.900 (a)(1)-(2). If the claimant is dissatisfied, he is entitled to a hearing before an ALJ. See 20 C.F.R. §§ 404.900 (a)(3). If the ALJ finds against the claimant, the claimant may seek review by the Appeals Council. See 20 C.F.R. §§ 404.900(4), 416.1400. Once the claimant has exhausted the foregoing administrative process, and obtained a "final decision", Section 405(g) entitles him to judicial review in federal district court. Plaintiff has a "final decision" subject to judicial review pursuant to Section 405(g).[5]

A claimant who seeks review by the Appeals Council must file his request for review within sixty (60) days of receiving the ALJ's ruling. 20 C.F.R. §§ 416.1468.[6] The regulations allow, however, for the 60-day term to be extended for "good cause". Id. Indeed, the deadline can be extended even after the 60-day term has elapsed. To this end, the regulation provides: "If you show that you had good cause for missing the deadline, the time period will be extended." 20 C.F.R. § 416.1468(b). The SSA's regulations concerning time extensions are based on considerations of fairness. The SSA may grant an extension of time to an untimely request due to "illness, accident, destruction of records, or mistake. Similarly, an extension may be granted where the claimant misunderstands the appeal process or is unable timely to collect necessary information, or where the Secretary undertook action that 'misled' the claimant." Bowen v. City of New York, 476 U.S. 467, 480 n.12 (1986). See 20 C.F.R. § 416.1411 (courts may consider the circumstances that kept the claimant from making the request on time).[7] The Court considers

---

[5] Petitioner goes back and forth as to what constitutes the "final decision" in his case: the 2016 Special Determination or the Appeals Council dismissal for untimeliness. See Docket No. 32 at pp. 19-20. Pursuant to Smith, the Appeals Council determination on February 4, 2021 is the "final decision" subject to judicial review. It marked the end to a proceeding "in which a substantial factual record has already been developed" and determines Plaintiff's rights. See Smith, 139 S. Ct. at 1175-77.

[6] The SSA presumes that claimant's receive notice of the agency's decision five (5) days after it issues the same. See 20 C.F.R. § 404.901.

[7] 20 C.F.R. § 416.1411 provides:

> (a) In determining whether you have shown that you have good cause for missing a deadline to request review we consider—
> (1) What circumstances kept you from making the request on time;
> (2) Whether our action misled you;
> (3) Whether you did not understand the requirements of the Act resulting from amendments to the Act, other legislation, or court decisions; and

whether the Appeals Council abused its discretion in dismissing Plaintiff's claim. Smith, 139 S. Ct. at 1779.

The Appeals Council dismissed Plaintiff's request for review after finding that there was no good cause to extend the time for Plaintiff to seek review. Tr. 7-8. Given the lengthy procedural travel of this case, Plaintiff's diligence in pursuing relief from the redetermination of benefits, the disputed nature of the time in which Plaintiff moved the Appeals Council for review, and the extraordinary circumstances that led to Plaintiff's redetermination and suspension of benefits, the Court finds that Plaintiff did establish good cause for the delayed request for review before the Appeals Council. His review should be considered on the merits at the Appeals Council level.

Plaintiff has been diligent in the prosecution of his claim for more than a decade. Plaintiff's plight started with the suspension of his disability benefits in the year 2013. The SSA concluded the internal investigation and issued its initial determination to terminate benefits on November 12, 2013. Upon being informed of the redetermination, Plaintiff requested timely reconsideration of that decision. On July 25, 2014, the SSA informed Plaintiff that his reconsideration was denied. He then again requested timely review by the ALJ. Tr. 259, 277-79. After not receiving any information from the ALJ for two (2) years, Plaintiff's non-attorney representative sent a follow-up letter requesting an expedited hearing due to Plaintiff's emotional state, which included suicidal ideations. Tr. 630. The hearing was finally held on July 27, 2018. That is, for five (5) years— from 2013 to 2018— Plaintiff actively sought for the SSA to reconsider its decision to redetermine and suspend his benefits.

As alleged by Plaintiff, once the ALJ issued its negative determination, his non-attorney representative timely filed the request for review before the Appeals Council. Docket No. 32 at p. 4. It was reasonable for Plaintiff to believe that his non-attorney representative had timely filed the

---

> (4) Whether you had any physical, mental, educational, or linguistic limitations (including any lack of facility with the English language) which prevented you from filing a timely request or from understanding or knowing about the need to file a timely request for review.
>
> (b) Examples of circumstances where good cause may exist include, but are not limited to, the following situations:
>
> […]
>
> > (9) Unusual or unavoidable circumstances exist, including the circumstances described in paragraph (a)(4) of this section, which show that you could not have known of the need to file timely, or which prevented you from filing timely.

request for review before the Appeals Council, especially given that the non-attorney representative had for years complied with the deadlines for reconsideration before the SSA and review before the ALJ. Indeed, on January 10, 2019, Plaintiff received a letter from his non-attorney representative stating that the request was pending before the Appeals Council. Docket No. 33-1. See Torres v. Barnhart, 417 F.3d 276, 279 (2d Cir. 2005) ("It would be unreasonable for district court to conclude … that [plaintiff] failed to exercise due diligence simply because he failed to ask the lawyer to confirm that the complaint had been timely filed."). Plaintiff has also submitted a sworn statement from his non-attorney representative stating that the request for review was timely filed on December 22, 2018. Docket No. 33.[8] Even though the SSA informed Plaintiff that it would provide him an opportunity to submit evidence that his request for review was timely, Plaintiff denies having received such a letter and the SSA has not presented evidence that the letter was sent or received by Plaintiff. And contrary to the SSA's argument that not receiving that letter would be harmless error, had Plaintiff been given the opportunity to present the January 10, 2019 letter at Docket No. 33-1 and sworn statement in Docket No. 36 to the Appeals Council, the Appeals Council would have been able to evaluate that additional evidence of "good cause". On these facts, the equities favor a finding of good cause. See e.g., Vargas v. Colvin, 2014 WL 6384150, at *3-4 (S.D. Fla. Oct. 28, 2014), report and recommendation adopted sub nom. Vargas ex rel. Acosta v. Colvin, 2014 WL 6455366 (S.D. Fla. Nov. 13, 2014) (claimant's attorney's sworn statement stating that that he had not received the ALJ's Notice of Decision in time was good cause to excuse untimely filing before the Appeals Council); Lanni v. Berryhill, 2019 WL 2301275, at *3-4 (M.D. Fla. May 30, 2019) (reversing and remanding the Appeals Council's decision to accept the ALJ's reasoning of lack of good cause when claimant alleged having received notice of the adverse reconsideration four months after it was issued).

The substance of Plaintiff's argument on appeal also supports a finding of "good cause" for the Appeals Council to review Plaintiff's claim on the merits. Plaintiff has argued that the

---

[8] The Commissioner urges the Court to disregard the sworn statement because it is not part of the administrative record and Plaintiff has not put the Court in a position to consider whether he satisfies the requirements in 42 U.S.C. § 405(g). The Commissioner further argues that, in any event, it is not sufficient evidence to establish that Plaintiff filed on time. See Docket No. 37 at p. 12. Keeping in mind that the Social Security Act is a claimant-protective statute, we consider the evidence under 42 U.S.C. § 405(g). Cf. 20 C.F.R. §§ 404.983, 404.984(a) (agency may take up any issues relating to claimant's case on remand, regardless of whether those issues were raised in prior administrative proceedings).

redetermination by the ALJ was barred by preclusion principles because there was no finding of fraud or similar fault by Dr. Miguez Balseiro. See Docket No. 32 at pp. 11-12. The SSA does not address Plaintiff's argument, having chosen instead to focus on the procedural arguments discussed above. See Docket No. 37. We nonetheless consider the argument for the sole purpose of establishing that principles of fairness also require that the Appeals Council consider the propriety of the redetermination of benefits.

Res judicata principles apply to administrative proceedings. See Berríos-Ortiz, 2019 WL 4599834, at *4 (D.P.R. Sept. 23, 2019); Sampson v. Califano, 551 F.2d 881, 882 (1st Cir. 1977); Miranda v. Sec'y of Health, Ed. & Welfare, 514 F.2d 996, 998 (1st Cir. 1975); United States v. Utah Construction & Mining Co., 384 U.S. 394, 421-22 (1966). Nonetheless, Congress delegated the SSA the power to redetermine a claim under certain circumstances, including "if there is reason to believe that fraud or similar fault was involved in the application of the individual." 42 U.S.C. § 405(u)(1)(A) (authorizes reassessments of initial disability determinations if there is reason to believe that there was fraud in the application); Berríos-Ortiz, 2019 WL 4599834, at *4 (res judicata inapplicable when a redetermination arose from the indictment of one of the doctors who examined the claimant). See also City of Arlington, Tex v. F.C.C., 569 U.S. 290, 291 (2013) (an agency can act pursuant to the authority delegated by Congress). Although it is unclear what the SSA considers sufficient "reason to believe" to trigger redetermination under section 405(u)(1)(A), based on section 405(u)(1)(B), a finding of similar fault can be made only if there is "reason to believe that, based on a preponderance of the evidence" a person knew that there was fraud or similar fault involved in the evidence provided. Berríos-Ortiz, 2019 WL 4599834, at *6. Redetermination of benefits based on fraud cannot be based on a mere hunch. Id.

In Berríos-Ortiz, a case nearly identical to this one, the SSA redetermined claimant's disability benefits and found that she was not disabled after holding that fraud or similar fault was involved in her disability application. The SSA explained that one of the physicians in claimant's record, Dr. Miguez Balseiro, provided incorrect, incomplete, or fraudulent evidence in his medical report. Although the SSA later conducted a Special Determination and concluded that no fraud or similar fault was found in claimant's record, her benefits were nonetheless terminated, and she was charged $31,570.00 for overpaid benefits. Berríos-Ortiz, 2019 WL 4599834, at *2. This District Court in Berríos-Ortiz held that the SSA had exceeded its statutory authority by redetermining claimant's benefits without a finding of fraud or similar fault. Id. at *7-8. In so

8

holding, this District Court noted that "to read section 405(u) to require redetermination even where the agency lacks reason to believe fraud or similar fault was involved would be to undermine section 405(h)," which created a general rule promoting the finality of SSA's decisions. Id. at *7.

Here, as in Berríos-Ortiz, the SSA initiated Plaintiff's redetermination of benefits after the United Stated Department of Justice filed criminal charges against Dr. Miguez Balseiro. Tr. 121-35. Dr. Miguez Balseiro was accused of making false statements or representations of facts in the medical reports submitted to the SSA. Dr. Miguez Balseiro was indicted for false statements to the SSA and pled guilty to a one-count information. Tr. 146-54. The FBI's investigation of Dr. Miguez Balseiro centered on his preparation of fraudulent reports for submission to the SSA. Tr. 96-97, 119. But Dr. Miguez Balseiro examined Plaintiff **only upon the SSA's request**. Cf. Berríos-Ortiz, 2019 WL 4599834, at *6. After receiving the OIG memorandum, the SSA made a Special Determination concluding that "the preponderance of evidence in file d[id] not support a Fraud or Similar Fault decision" regarding the evidence submitted by Dr. Miguez Balseiro. Tr. 240-242. On October 19, 2018, despite having reviewed the evidence from Dr. Miguez Balseiro and noting that he "d[id] not find evidence of similar fault as is also noted in the Special Determination (6A)," the ALJ found that Plaintiff was not disabled. Tr. 31-44. Given the finding of absence of fraud in the original determination, as in Berríos-Ortiz, it appears that the SSA in Plaintiff's case did not have statutory authority to make a redetermination. See Berríos-Ortiz, 2019 WL 4599834, at *7 ("[T]he SSA's interpretation of the redetermination process established by Congress contradicts the plain language of the statute and is therefore entitled no deference."). The SSA's apparent lack of authority to continue with the redetermination of Plaintiff's benefits further contributes to the Court's conclusion that principles of fairness require a finding of good cause to allow for substantive review by the Appeals Council.

Given the extraordinary nature of Plaintiff's claims as discussed above, a finding of procedural default to preclude review by the Appeals Council would have consequences that are contrary to the claimant-protective nature of the Social Security Act. Plaintiff's benefits were suspended in 2013. He diligently pursued his case. Without a substantive review by the Appeals Council, Plaintiff would be required to pay the SSA $49,643.00 in overpaid benefits. Respecting the contours of administrative law, the Court remands to have the agency address any "substantive questions in the first instance." Smith, 139 S. Ct. at 1780 (courts should generally restrict their

review to the procedural grounds that were the basis for the Appeals Council dismissal and permit the agency to address any substantive questions).

### III. Conclusion

For the reasons discussed above, the Appeals Council's dismissal of Plaintiff's request for review is **REVERSED**. The case is remanded for administrative proceedings consistent with the Court's opinion.

**IT IS SO ORDERED.**
In San Juan, Puerto Rico, this 12th day of February 2024.

s/Giselle López-Soler
GISELLE LÓPEZ-SOLER
United States Magistrate Judge